STATE ex rel. RICHARD F. GRANT v. SAMUEL G. IVERSON.[1]

June 17, 1904.

Nos. 13,835—(20).

**State Auditor—Certiorari.**

The action of the state auditor, ex officio commissioner of lands, in refusing to grant an application for a mineral lease of certain lands lying under the bed of a meandered lake, constituting public waters, is not reviewable by writ of certiorari.

Writ of certiorari issued from the supreme court to review the proceedings of the defendant, as state auditor, in refusing to grant the application of relator for a mineral lease of certain land lying beneath the waters of a meandered lake. Writ quashed.

*Richard F. Grant, Wilson G. Crosby, John M. McClintock* and *Francis W. Sullivan,* for relator.

The king at common law had title in fee to all lands under navigable waters, and had the right to dispose of the same, subject only to the public rights of navigation and fishery, the protection of which public rights was vested in parliament, after Magna Charta. Shively v. Bowlby, 152 U. S. 11. In this country, after the revolution, each of

[1] Reported in 100 N. W. 91.

the original thirteen states became sovereign over the territory within its limits and succeeded to both the jus privatum of the king and the jus publicum of parliament. The jus privatum and jus publicum, nevertheless, have remained, and are now, distinct and independent. A state may exercise its jus privatum and grant or lease lands beneath the navigable waters within its limits. The jus publicum it retains as inalienable, and as a trust over the waters for the protection of the public rights. The jus publicum is always excepted by implication from any disposition of the soil under navigable waters. New states, when admitted into the Union, come in with the same rights and privileges as the original thirteen states. Illinois Cent. R. Co. v. Illinois, 146 U. S. 466; Langdon v. Mayor, 93 N. Y. 129, 155; Trustees v. Strong, 60 N. Y. 56; Martin v. Waddell, 16 Pet. 367; Mumford v. Wardwell, 6 Wall. 436.

Different courts use different terms to define the nature of the state's title to lands under navigable waters. Some courts use the term "proprietor", others the term "sovereign" or "sovereign capacity", others the term "trustee". By whatever name the different courts describe the state's ownership, they are all agreed that a state may grant or lease these lands under water, subject to the public rights. The distinction made by these various terms refers rather to the method of acquisition than to the right of disposal. When a state acquires land by express grant it acquires the same as any individual might—as a proprietor. When it acquires title to waste and unappropriated lands it does so not as a proprietor, but by virtue of the fact that it is sovereign—in a sovereign capacity. Hanford v. St. Paul & D. R. Co., 43 Minn. 112; Union Depot, St. Ry. & T. Co. v. Brunswick, 31 Minn. 300; Hoboken v. Pennsylvania R. Co., 124 U. S. 656; Miller v. Mendenhall, 43 Minn. 96; Saunders v. New York, 144 N. Y. 75.

The rules of law which are laid down in connection with tide waters, apply with equal force to all public navigable waters. Illinois Cent. R. Co. v. Illinois, 146 U. S. 387. These rules apply with equal force to public navigable meandered lakes within the state of Minnesota. Lamprey v. State, 52 Minn. 181. A state may grant or lease lands beneath the navigable waters within its limits. McCready v. Virginia, 94 U. S. 391; Hardin v. Jordan, 140 U. S. 381; Chapman v. Hoskins, 2 Md. Ch. 485; Gough v. Bell, 21 N. J. L. 156; People v. Tibbetts, 19

N. Y. 523; Illinois Cent. R. Co. v. Illinois, supra; Lamprey v. State, supra. In different states it has been found that the lands lying beneath navigable waters are capable of being put to various uses. These states have granted and leased these lands for the uses to which they are adapted. Illinois Cent. R. Co. v. Illinois, supra; Martin v. Waddell, 16 Pet. 410; Pollard v. Hagan, 3 How. 220; McCready v. Virginia, supra. In the state of Minnesota the riparian owner has a right or license of access or communication with the navigable thread of the water and he may improve, reclaim and occupy the bed to further this purpose. His rights are at most surface rights. In this state, however, they are property rights. He has no title to the bed of navigable waters. He cannot mine beneath the beds of navigable waters. The beds belong to the state, subject to his right of access and communication. Even by reclamation he does not acquire title to the lands reclaimed. He still has his surface right, but the title remains in the state. Lamprey v. State, supra; Lamprey v. Mead, 54 Minn. 298; Union Depot, St. Ry. & T. Co. v. Brunswick, supra; Hanford v. St. Paul & D. R. Co., supra; Brisbine v. St. Paul & S. C. R. Co., 23 Minn. 130; State v. St. Paul & D. R. Co., 81 Minn. 425; Carli v. Stillwater St. Ry. & T. Co., 28 Minn. 380.

*W. J. Donahower,* Attorney General, and *Louis L. Hammon,* for respondent.

*W. R. Begg,* for L. W. Hill and Wright Land Company, Limited, interested parties, filed a brief by consent.

Certiorari will not lie to review ministerial, legislative or executive acts of state officers. The sole function of this writ is to review the judicial or quasi-judicial acts of officers. In re Wilson, 32 Minn. 145; States v. Mayor, 34 Minn. 250; Lemont v. Dodge Co., 39 Minn. 385; Christlieb v. Hennepin Co., 41 Minn. 142; Moede v. Stearns Co., 43 Minn. 312.

Respondent rightly refused to execute the mineral lease demanded by the relator, because the state of Minnesota has no estate or interest in the lands described which can be leased or conveyed by the respondent land commissioner. The state has no proprietary interest in the bed of a meandered public or navigable lake. Its only interest in the bed

of such a lake is held by it in its sovereign capacity, in trust for the benefit of the public. Union Depot, St. Ry. & T. Co. v. Brunswick, 31 Minn. 297; Hanford v. St. Paul & D. R. Co., 43 Minn. 104; Lamprey v. State, 52 Minn. 181; Bradshaw v. Duluth Imp. Mill Co., 52 Minn. 59; Woodruff v. North Bloomfield G. Min. Co., 18 Fed. 753; Martin v. Waddell, 16 Pet. 367; Pollard v. Hagan, 3 How. 212; Hardin v. Jordan, 140 U. S. 371; Smith v. City, 92 N. Y. 463. Under the terms of Laws 1889, c. 22, § 1, as amended by Laws 1895, c. 105, and Laws 1897, c. 312, respondent land commissioner has power to execute mineral leases only on lands owned by the state as proprietor.

The law giving to the state land commissioner power to execute mineral leases and contracts upon lands of the state, if construed to authorize the execution of such leases and contracts upon the beds of meandered lakes, is unconstitutional and void in so far as it attempts to authorize such leases upon the beds of such lakes. The meander lines about a lake are not boundaries, and in no wise affect the question presented in this proceeding. Schurmeier v. St. Paul & P. R. Co., 10 Minn. 59 (82); St. Paul & P. R. Co. v. Schurmeir, 7 Wall. 272; Lamprey v. State, 52 Minn. 181; Olson v. Thorndike, 76 Minn. 399. In the case of a lake nonnavigable in fact, the abutting owners take title to the center of the lake. Village of Wayzata v. Great Northern Ry. Co., 50 Minn. 438; Lamprey v. State, supra; Olson v. Thorndike, supra; Shell v. Matteson, 81 Minn. 38; Hanson v. Rice, 88 Minn. 273. In the case of lakes navigable in fact the abutting owners take title in fee to the water's edge, with all the rights incident to riparian ownership on navigable waters, including the right to accretions or relictions formed or produced in front of his land by the action or recession of the water, the right of access to the water, and the right to build wharves and piers, and other rights. Schurmeier v. St. Paul & P. R. Co., supra; Brisbine v. St. Paul & S. C. R. Co., 23 Minn. 114; Carli v. Stillwater St. Ry. & T. Co., 28 Minn. 373; Union Depot, St. Ry. & T. Co. v. Brunswick, 31 Minn. 297; Miller v. Mendenhall, 43 Minn. 95; Hanford v. St. Paul & D. R. Co., 43 Minn. 104; Gilbert v. Eldridge, 47 Minn. 210; Minneapolis Trust Co. v. Eastman, 47 Minn. 301; Wait v. May, 48 Minn. 453; Village of Wayzata v. Great Northern Ry. Co., 50 Minn. 438; Lamprey v. State, 52 Minn. 181; Bradshaw v. Duluth Imp. Mill Co., 52 Minn. 59; Castle v. Elder, 57 Minn. 289;

St. Paul & P. R. Co. v. Schurmeir, 7 Wall. 272; Yates v. Milwaukee, 10 Wall. 497.

*Jaques & Hudson,* for interested parties, filed a brief by consent.

The decisions of the state of Minnesota clearly establish the following rules of property, to wit: First: That the state has an interest in the soil underlying navigable waters in its sovereign capacity only for the purpose of protecting, controlling and improving the common rights of the people to the use of navigable waters as such, and has no private or proprietary interest therein. The right of the state would, of course, include such interest in the underlying soil as would enable it to dredge and excavate such soil for the purpose of deepening channels and constructing or improving harbors or in any way bettering such body of water for public navigation, the state having full jurisdiction over such soil for the above mentioned or similar purposes. Second: The shore owners have all the remaining rights in said underlying soil, after allowing to the state and the people all rights arising by reason of said water constituting a navigable body of water. The rights of such shore owners include the right to use such underlying soil in any way that does not endanger or interfere with public rights.

It is claimed that the above rules of property have been established by the decisions of the state, and that any one purchasing or owning lands abutting on navigable waters in the state of Minnesota has a right to rely upon the above as the law of this state. If a private individual had made such statements in regard to the ownership of the soil underlying navigable waters, as the state of Minnesota has made through its supreme court, to an intending purchaser of shore land, he would be estopped to claim a greater interest than the one claimed in such statements. While the law of estoppel perhaps does not hold as against the state, still, the state should hesitate to claim at this time a greater interest in the soil underlying navigable waters than by the decisions of its supreme court it has hitherto claimed. This brief has been written on the theory that Snowball Lake constitutes a navigable body of water, but most probably it is not. As a matter of fact, most of the lakes in Northern Minnesota are not navigable in any proper commercial sense, and undoubtedly the court will take judicial notice of this fact. Suppose, however, that hereafter some of these lakes may be

held to be navigable bodies of water. Upon principle, why should there be any difference between the rights of a shore owner on such small navigable lakes and of a shore owner on a small nonnavigable lake, except such as is caused by the fact that the public has certain rights in one by reason of its navigability and not in the other? Upon principle, the rights of a shore owner upon a navigable lake should be the same as the rights of a shore owner upon a nonnavigable lake, subject to the rights of the public.

*Washburn, Bailey & Mitchell, George W. Shaw* and *M. H. Stanford* also filed briefs by consent, in behalf of interested parties.

LEWIS, J.[2]

We are asked to review on writ of certiorari the action of the state auditor, ex officio commissioner of the state land office, in refusing to issue a mining lease, under Laws 1889, p. 68, c. 22, and the amendments thereto for a portion—sections 14 and 15, township 56 north, of range 23 west—of a meandered lake constituting public waters, situated in Itasca county. The return of the state auditor contains a certified copy of the application for the lease, and a copy of the decision of the auditor denying the application, and alleges that the writ was improvidently issued; this court not having jurisdiction to review the proceedings.

The application for the lease is in the prescribed form, and the return shows that it was refused for the purpose of inviting litigation, and not as a final expression of opinion by the auditor. The cause has been submitted on the merits and argued by able counsel, and the court has had the benefit of additional argument and briefs by interested parties not directly connected with this action. Although the attorney general waived all objections to the validity of the writ, owing to its importance we have determined to pass upon that question, and the conclusion we have reached will make it unnecessary to consider the merits of the case.

Without entering upon a review of the earlier decisions, we will briefly refer to some of the later cases on the subject. In State v. Clough, 64 Minn. 378, 67 N. W. 202, an attempt was made to review by certiorari the proceedings of the governor, secretary of state, and state auditor under Laws 1895, p. 696, c. 298, which provided for the

[2] DOUGLAS, J., having been of counsel as attorney general, took no part.

enlargement of organized counties. It was there held that certiorari would not lie, because the action of those officers was in no manner either judicial or quasi judicial, and emphasis was placed upon the fact that in the performance of their duties they were compelled to ascertain whether the facts in reference to the petition complied with the law. As an illustration of what are judicial or quasi judicial acts, the court used the following language:

"To render the proceedings of special tribunals, commissioners, or municipal officers judicial in their nature, they must affect the rights or property of the citizen in a manner analogous to that in which they are affected by the proceedings of courts acting judicially. * * * Where proceedings are judicial, if no right of appeal is given, certiorari will lie, but the fact that no right of appeal is given has no bearing on the question whether the proceedings are judicial in their nature. Neither is there anything in the suggestion that certiorari ought to lie because there is no other adequate or speedy remedy by which to review the proceedings." In the case of State v. Dunn, 86 Minn. 301, 90 N. W. 772, certiorari was recognized as the proper procedure to review the action of the state auditor in determining the proper township in which personal property should be taxed.

Relator relies upon the case of Minnesota Sugar Co. v. Iverson, 91 Minn. 30, 97 N. W. 454, for authority to sustain the writ. In that case the auditor refused to allow the claim for bounty upon the ground that the law was unconstitutional, and the court assumed that in so doing he did not exercise a ministerial duty, but acted judicially in passing upon the constitutionality of the law. By chapter 105, p. 227, Laws 1895, the commissioner of the state land office is authorized to execute leases and contracts for the mining and shipping of ore from state lands. As amended by chapter 225, p. 330, Laws 1903, the forms of mineral leases are prescribed by the land commissioner, but the statute defines their terms, and it is provided that the first person or corporation making application and paying the necessary money shall be entitled to receive the lease. Upon application in proper form for a mineral lease upon state land, the money being paid or tendered, it is the duty of the commissioner to issue the lease; and the difficulty lies in determining whether, in refusing to issue a lease, his action partakes of a judicial nature.

As remarked in State v. Dunn, supra, the exercise of judicial functions may involve the performance of legislative or ministerial duties, and the performance of such duties may, in a measure, involve the exercise of judicial functions, and the exercise of judicial functions is to determine what the legal rights of the parties are, and, when an officer is clothed with such authority, and undertakes to determine those questions, he acts judicially.

Under the mining lease law, the land commissioner is not required to determine, as a legal proposition, whether the state has title to the land applied for, nor is he required to pass upon the nature of the state's title. He is not by that act vested with any judicial or quasi judicial powers. In this case the land did not belong to the state, but if the commissioner determined, as a matter of law, that the state had no title to the minerals under public waters, or, if it did, that the act referred to did not authorize mineral leases for such minerals, then it may be said that he assumed to act in a quasi judicial manner. But the rights and title of the state and of the riparian owners in respect to minerals lying under public waters is a complicated legal question, and can only be determined by the application of legal principles. The constitution and the laws have definitely referred the solution of such problems to the courts. There is nothing in the act to indicate an intention on the part of the legislature to transfer such authority from the courts to the land commissioner. It is not material what reason the officer may have given for refusing to issue a lease, and it can make no difference if he acted arbitrarily in the premises. The decisive question is not what he may have assumed to do, but what power was conferred upon him.

We are of the opinion that the duties of the land commissioner under the laws specified are purely ministerial, and the writ must be quashed. So ordered.